### HENSCH v. ORMOND et al. *

(Circuit Court of Appeals, Eighth Circuit. July 28, 1924.)

No. 6503.

1. Conspiracy ⟨⇒19—Facts held not to show conspiracy to deprive plaintiff of his interest in land.

Facts *held* not to show conspiracy by defendants to deprive plaintiff of his interest in

*Rehearing denied October 23, 1924.

certain land, by preventing him from redeeming from mortgage sales.

2. Conspiracy ⟨⇒19—Burden on plaintiff to show conspiracy and resulting damages.

In an action for damages for conspiracy to deprive plaintiff of his interest in land, burden was on plaintiff to adduce evidence tending to show both conspiracy charged and that damages resulted to him by defendants' acts in furtherance of conspiracy.

In Error to the District Court of the United States for the District of Minnesota; Andrew Miller, Judge.

Action by A. F. Hensch against J. B. Ormond and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Frank W. Booth, of Minneapolis, Minn., for plaintiff in error.

J. B. Ormond, of Morris, Minn. (N. F. Field, of Fergus Falls, Minn., on the brief), for defendants in error Ormond, Siverts, and Citizens' Bank of Morris.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

LEWIS, Circuit Judge. This action was brought by A. F. Hensch against Citizens' State Bank of Morris, Minnesota, Siverts its cashier, J. B. Ormond, an attorney at Morris, and one Dan Meyer, defendants in error, to recover damages on account of an alleged conspiracy between the defendants by and through which Hensch claimed he lost his interest in and rights to a quarter section of land in Stevens County, Minnesota, because of the alleged wrongful acts and conduct of the defendants in execution of the conspiracy. The defendants answered separately and each denied the charges made in the complaint. At the trial the court, on motion of defendants, instructed a verdict in their favor at the close of plaintiff's case. Hensch has brought the case here, and the only question presented is, whether the court erred in directing the verdict. We have read the record and are convinced that the plaintiff's evidence wholly failed to sustain any of the charges which he made against the defendants, and that the court did not err in directing a verdict against him. These are the facts:

[1, 2] Hensch obtained what title he had to the land from John Walsh on July 15, 1915. Walsh made a deed to Hensch on that day. It was then encumbered by three mortgages, given in this order: one to the defendant bank for $2,750.00, one to an Iowa bank for $1,250.00, on which there had been a $500.00 payment, and one to Keenan and Clarey for $2,454.00. There had been a fore-

closure decree on the Keenan and Clarey mortgage when Hensch purchased from Walsh and a sale had been made by the sheriff under that decree. Keenan and Clarey were the purchasers and held the sheriff's certificate of sale. The year given by statute for redemption from that sale would expire on July 10, 1916. Also, on January 22, 1916, the Iowa bank purchased under a foreclosure sale on its mortgage and obtained from the sheriff his certificate. The period of redemption from that sale would expire January 22, 1917. In May, 1916, about two months before the period of redemption from sale under the Keenan and Clarey mortgage would expire, Hensch went to the defendant bank to see if he could obtain a loan from it on the land in an amount sufficient to redeem from the two sales and to also pay off the mortgage of $2,750.00 to the defendant bank. No understanding was reached. In June he went back to the bank, and Hensch testified that at that time Siverts, acting for the bank, agreed to make the loan, the amount of the three mortgages to be divided and secured by two new mortgages, one to bear 6½ per cent. interest and the other 10 per cent., but he did not testify what amount each of the new mortgages should secure, and there is no evidence in the record as to that. He further testified that Siverts told him to come back and bring his wife with him on July 10, which was the last day for redemption from the sale under the Keenan and Clarey mortgage, and that they would then fix the whole matter up. He went back at that time. He testified that Siverts then demanded of him that an additional amount of $1,600.00 be included in the mortgages as a bonus to the bank for making the loan, and that he declined to do that. He then went to Ormond and told him what had occurred between him and Siverts. Ormond went to the bank in behalf of Hensch, talked the matter over with Siverts, and Siverts agreed that Hensch should have an extension of time beyond the statutory period of redemption until he could procure a loan on the land to pay off the three mortgages. The bank had theretofore bought the two sheriff's certificates of sale from Keenan and Clarey and the Iowa bank. Ormond reported his conversation with Siverts to Hensch, and Hensch at once made application to a real estate agent, who agreed to obtain a loan for Hensch on the land for $7,500.00, provided the title was good.

On examination of the abstract of title by the attorney for the company to which the agent applied for the loan, objection was made to the title. The objection was embodied in a letter which was received by the agent and turned over to Hensch about ten days after his application to the agent. Hensch showed this letter to Siverts and Ormond. He says Ormond told him he thought the objection to the title was good. The defendant Meyer, in some way not disclosed by the record, learned of the objection to the title. That objection was this: One McClean had purchased the land in October, 1905, and in December, 1906, before either of the three mortgages was given, conveyed it to Johnson, and McClean's deed of conveyance contained a clause that caused the attorney of the loan company to reach the conclusion that McClean's deed to Johnson was not an absolute conveyance but a mortgage. Whatever title or interest Hensch had come through Johnson. Believing the objection to the title good, Hensch realized, if that were true, that the bank's entire claim under the three mortgages was worthless. McClean was dead, but his heirs resided in South Dakota, and Meyer went there, obtained deeds from them to himself and made a contract with the heirs to take such steps as he deemed necessary to obtain for them their interest in the land, they to pay him for his services. When Hensch learned early in August, 1916, what Meyer had done, he went to South Dakota and obtained from the McClean heirs a contract and power of attorney to bring an action to set aside and cancel the deeds which the heirs had made to Meyer. Hensch returned to Morris and brought an action in behalf of the McClean heirs against Meyer and obtained a decree setting aside the deeds that the McClean heirs had made to Meyer. Meyer appealed from that decree and it was affirmed by the Supreme Court of Minnesota. 148 Minn. 337, 181 N. W. 917. In February, 1917, the defendant bank, acting by its attorney, defendant Ordmond, brought an action against Hensch, Meyer and the McClean heirs to quiet its title to the land. Both sheriff's certificates of sale under the two mortgage foreclosures had matured, the periods of redemption had expired, and under the State statute the title which had passed under those sales had vested in the defendant bank, the holder of the certificates. In the action brought by the bank, Hensch and the McClean heirs in their answers claimed that the McClean deed to Johnson was a mortgage, that title to the land was in the McClean heirs and that the defendant bank had no title to or interest in the land. On trial of the bank's case the

court held that the McClean deed to Johnson was not a mortgage but an absolute conveyance, entered decree against the defendants, adjudged title in the bank and quieted that title. That decree was affirmed by the Supreme Court on May 13, 1921. 149 Minn. 94, 182 N. W. 913.

Hensch then, on September 26, 1921, brought this action, claiming that there was a conspiracy between the defendant ·bank, Siverts, Ormond and Meyer to prevent his redeeming from the mortgage sales. Hensch testified that he employed counsel for the McClean heirs in their suit against Meyer, and for himself and them in the suit brought against them, Meyer and himself by the bank. He admitted that his interest and purpose in that litigation was to establish that the deed from McClean to Johnson was a mortgage, and he expected, if that could be accomplished, to buy the land from the McClean heirs; but having failed in that purpose, he claimed the right to fall back on his understanding with Siverts and redeem from the bank. On what understanding with Siverts did he rely? That is not made clear, whether the bank was to take from him two new mortgages securing the amount of the three old mortgages, or whether he was to obtain a loan elsewhere and pay off the three mortgages. The first arrangement seems to have been mutually abandoned when the bank agreed to extend the time, so Hensch could get a loan elsewhere. The bank tried to get Keenan and Clarey to take back the sheriff's certificate of sale issued to them, when the controversy arose about the McClean title, and it was certainly willing to take from Hensch the amount covering its three claims at any time pending the litigation. The testimony so' indicates. But it was not the purpose of Hensch during that litigation either to give the bank two mortgages on the land for the amount of ·the three old mortgages or to pay off those mortgages. He was attempting to establish by litigation that the claims of the bank were worthless. His attitude throughout that litigation was notice to the bank that he would not pay its claims, that they were invalid and he would not carry out any arrangement or understanding between him and the bank in relation thereto. He did not testify, and there is no evidence, that after May 13, 1921, when the Supreme Court affirmed the decree adjudging title in the bank, he demanded of the bank that it deed the land to him and take from him two mortgages covering the total amount of its claims. Conceding that there was such an· under-standing, the bank would have been entitled to add to its claims the cost and expenses to which it had been put in the litigation carried on against it at the procurement of Hensch. 27 Cyc. 1824, cases in note 4. But there is no evidence that any demand of any kind was made on the bank by Hensch after May 13, 1921, and that it refused to comply with that demand. For all that appears the bank may have then been ready and willing that Hensch should take title and pay· to it all of its just claims. The burden was, on Hensch to adduce evidence tending to show both the conspiracy charged and that damages resulted to him by the acts of the defendants in furtherance of that conspiracy. If A. and B. conspire to steal and carry away a stock of goods, they are not liable in damages on the conspiracy to the owner if the goods are otherwise lost to him. Waiving for the moment the inconsistent positions and antagonistic conduct of Hensch ·toward the bank in his attempt to wholly destroy its claim and interest in the land, and conceding that the bank had bound itself to wait on Hensch, as he claims, until the title as against the McClean heirs was made good, he assigns no reason for his failure to demand performance by the bank after May 13, 1921, when the bank finally established its rights against the McClean heirs over his stubborn and protracted opposition. Nor does the proof show that it would not, even then, willingly have taken the amount of its claims and reimbursement of the cost and expenses which Hensch had compelled it to lay out. In the absence of such proof there is no basis for the claim that Hensch suffered damages because of the conspiracy. But there was no proof of a conspiracy against Hensch. His sole complaint against Ormond is that Ormond brought the suit against him and the McClean heirs for the bank. He says that Ormond had acted for him and his wife prior to the institution of that suit; but the evidence establishes that Ormond had not represented Hensch or Mrs. Hensch in any matters for several months prior to the institution of that suit, that Ormond did not at that time represent either of them, that he was at no time regularly retained by Hensch and his wife but had been employed by them from time to' time as they might need services of an attorney. It further appears that when Mr. Siverts, acting in behalf of the bank, concluded some steps should be taken to protect its interest, he went to Mr. Cherry, an attorney who usually attended to matters for the bank, and found that he had already been

employed by Hensch to represent him as against the bank. Mr. Siverts then went to Mr. Spooner, another attorney, and Mr. Spooner told him that he could not represent the bank because he had represented other interests in the same subject-matter. After that the bank employed Mr. Ormond to bring the suit. It is idle to contend that these facts had any tendency to show that Ormond was in a conspiracy against Hensch; neither is there any evidence that Meyer and the bank, or Siverts and the bank, or Siverts and Meyer, or all three of them, had entered into a conspiracy. On the facts in this record, the nearest approach to the establishment of a conspiracy was one between Hensch and the McClean heirs against the bank.

The case is wholly without merit and the judgment is

Affirmed.