## LOWE et al. v. CONSOLIDATED EDISON CO., Inc., et al.

District Court, S. D. New York.
May 15, 1941.

**288**

W. H. Crichton Clarke, of New York City, for plaintiffs.

Leboeuf, Machold & Lamb, of New York City (Horace R. Lamb and Craigh Leonard, both of New York City, of counsel), for Consolidated Edison Co., Inc.

White & Case, of New York City (Lowell Wadmond, of New York City, of counsel), for General Electric Co.

Ira Jewell Williams and Ira Jewel Williams Jr., both of Philadelphia, Pa., for Proctor Electric Co.

Louis S. Posner, of New York City (Jacob Rappoport, of New York City, of counsel), for Artistic Lamp Mfg. Co.

Hamerman & Caminez, of New York City, for Davega, Inc.

Leon Lauterstein, of New York City, for R. H. Macy & Co.

CONGER, District Judge.

Motion by plaintiffs for an order restraining and enjoining the defendants pending the trial and determination of this action from carrying on certain acts which will be more fully referred to herein.

This action was commenced by the plaintiff in April, 1940, and thereafter an amended complaint was served in July, 1940. No answer has as yet been served by the defendants, inasmuch as the time to answer has not as yet expired. Defendants have moved for a bill of particulars among other things, and an order has been entered thereon, but the plaintiffs have not as yet furnished the bill. This application has been made on the amended complaint, affidavits and exhibits submitted by the plaintiffs.

This action was commenced pursuant to the Sherman Anti-Trust Act, and jurisdiction in this court is predicated by allegations of the plaintiffs that the defendants have violated Chapter 647 of the Laws of 1890, 26 Stat. 209, as amended by Public Act No. 314, 75th Congress, effective August 17, 1937, 15 U.S.C.A. §§ 1–7, 15 note.

It might be well to quote the Sherman Act (Section 1): "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal * * *."

The gravamen of the complaint is that it alleges conspiracy in restraint of trade and commerce among the several states, and to create a monopoly thereby, by granting preferential terms to selected dealers. I quote from paragraph Tenth of the complaint as illustrative of the general nature thereof:

"Tenth. That the said defendants, General Electric Company Inc., and Proctor Electric Company, Artistic Lamp Manufacturing Co. Inc., Consolidated Edison Company, Inc., and its above described system affiliates have entered into contracts, combinations and conspiracies in restraint of trade and commerce among the several states and have monopolized and attempted to monopolize and have combined and conspired among themselves and with other

persons to monopolize the trade or commerce among the several states in electrical and gas appliances."

The complaint seems to be directed against the general method of merchandising of various electrical appliances by the Consolidated Edison Company and its affiliates, and specifically against the sale campaigns for so-called package deals.

When I use the term Edison system companies hereafter, I intend to include all the electric and power companies who are defendants herein.

What is particularly objected to on this application and that which is sought to be enjoined, is the present campaign known as the "Edison 1941 Combination," and in which it is alleged all the defendants are participating. It appears that this "Edison 1941 Combination" consists of three articles, a bridge lamp, a radio and a toaster, all sold together for $29.25, which is much less than the combined market price. The radio is made and sold by defendant General Electric Company; the toaster by defendant Proctor Electric Company; and the lamp by defendant Artistic Lamp Manufacturing Co., Inc.

The method of sale is somewhat complicated, and need not be gone into here in full, except to say that the campaign is conducted by the Edison system companies, and a sale may be made in two ways: (1) by the employees of the Edison system companies and (2) by cooperating dealers. The practice is fixed, and may not be lowered or raised. There is a pooling arrangement whereby profit from the sales made by the Edison system employees is pooled and paid over to the cooperating dealers in proportion to the business they have done themselves, after certain expenses and deductions therefrom.

The cooperating retail dealers sign an agreement with the Edison system companies with certain conditions. These package deals or combinations are not available for sale to any dealers, except cooperating dealers.

The Edison system companies make no profit from these sales themselves, except insofar as these electric appliances increase the general electric power consumption. The profits from the sales of these appliances go to the cooperating dealers.

I have given this case a great deal of attention and study. I am satisfied that at this time a temporary injunction should not be granted. The plaintiffs contend that "no disputed issues of fact which affect the merits of plaintiffs' claim are to be adjudicated by a decision on this motion." I cannot agree with them on this statement. In order to grant the relief requested herein, I will have to determine the merits of the whole controversy, at least, I shall have to find that the plaintiffs have made out a prima facie case. The plaintiffs contend that I must find from the plan itself, as set forth in the defendants' papers, that it is illegal and invalid. However, there are other elements to consider, all of which are in dispute. I enumerate the following: Plaintiffs contend that the defendants Artistic Lamp Manufacturing Co., Proctor Electric Company and General Electric Company are a part of the alleged conspiracy, and conspired with the other defendants to bring about this alleged illegal arrangement; yet each of them deny by affidavit that they had a part in any conspiracy or illegal combination, and that all they did, each of them, was to sell a designated number of a designated article for a certain price, upon terms and conditions which were open to anyone; that their only dealings were with Consolidated Edison Company and that it consisted of goods sold and delivered in New York City for a certain price; that they had no contracts or dealings with any other defendants.

Certainly as to these defendants there is presented a serious question of fact, and it would be an arbitrary abuse of power by the court to restrain them on the showing made so far.

The same applies to Davega, one of the defendants, which is included, I assume, as a cooperating dealer. This defendant claims that it was not a party to any conspiracy or combination, and further shows by affidavit that it had nothing to do with any merchandising plan promoted, or now promoted, by the Consolidated Edison Company or any of its affiliates; and that its only connection with the Edison companies

was to purchase from time to time electrical appliances in its regular course of its retail business and to sell the same.

R. H. Macy & Co., one of the defendants, and I assume, an alleged cooperating dealer, in an affidavit states that it never had anything to do with any conspiracy or combination; and that its only connection with the Edison companies was to purchase in the regular course of its retail business electrical appliances from the Consolidated Edison Co. and resell them.

It is very apparent that as far as these two defendants are concerned their participation in this alleged conspiracy is a serious question of fact which can only be determined after a trial.

The legal right to an injunction against these defendants above is at least doubtful, both in point of law and in fact, and under the circumstances no injunction should be granted against them at this time. Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060; Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480.

I shall now take up the question of the right of the plaintiffs to a temporary injunction against the Edison system companies and its cooperating dealers.

The basis of this court's jurisdiction herein is the Sherman Anti-Trust Act. If the plaintiffs are to succeed here, and if they are entitled to any relief by way of a temporary injunction, they must first bring the controversy within the jurisdiction of this court. They must first establish a prima facie case which necessarily includes establishing a contract, combination or conspiracy in restraint of interstate commerce.

This they have failed to do, and this is vital. At least there is such a serious conflict that I would not be justified on papers alone in granting the relief asked for.

From what I have before me this whole controversy seems to be purely local. Lowe Electric Co. Inc. and Ackerman Electric Company, Inc. are engaged in business in Westchester County, New York. There is no allegation that any of the plaintiffs are engaged in interstate commerce. All of the defendants, except one, are corporations of the State of New York. Each of the defendant manufacturers insist by affidavit that they had no part in a conspiracy, but that they simply sold the goods and delivered them to New York City; and that their connection with the transaction ended there. The Edison system companies all do business in New York City and Westchester County, New York State, and the applications are sold for the use of their customers.

The case of Smith Metropolitan Market Co. v. Food & Grocery Bureau, D.C., 33 F.Supp. 539, 540, is well in point. There the court said:

"Assuming that some of the products on its shelves are imported from other states, the moment they reach its shelves, they come to rest and cease to be 'in the flow' of interstate commerce. * * * So that, whether we look at the facts from the angle of the plaintiff and the nature of the business it is engaged in or from the angle of the defendants, and the nature and extent of the practices charged against them, we are dealing strictly with intrastate activities, which are outside the purview of the Anti-Trust Laws and of their penal provisions which allow persons to recover damages for violation thereof. 15 U.S.C.A. § 15. As the plaintiff's bill of complaint has set forth fully the practices of the parties, we have the right to assume that no other facts exist, which would change the activities attributed to the defendants, so as to give them interstate scope."

Balancing the equities, it seems to me that to grant the injunction prayed for herein, would be an abuse of power. The plaintiffs claim irreparable injury, yet there are no facts stated as to what the injury would be or how much it would be. There is nothing to show the amount of plaintiffs' business, or to what extent it would be injured by this program. If the injunction were granted and later, on the trial of the case, plaintiffs lost, there would be no way to compensate the defendants. Defendants have a great deal of money invested in this proposition, something like $2,300,000, the aggregate cost; and the total amount to be realized on the sale of the packages will approximate $3,000,000. The various manufacturing companies have contracted

to manufacture and sell 100,000 units of the appliances used in the bargain package.

If the plaintiffs are eventually successful on the trial of this issue, I am unable to ascertain that they will suffer a great irreparable injury by the denial of this motion. Yet I can see where the defendants will be damaged beyond recompense were I to grant this injunction and the defendants be later successful at the trial.

As Judge Caffey of this Court stated, even in a case where he felt it likely that the plaintiff would ultimately prevail:

"Again, under the circumstances of this case it seems to me that award of a preliminary injunction, practically, would be the equivalent of a final decree for the plaintiff; also that it would be extremely difficult, if not impossible, to frame the condition of a bond to be given by the plaintiff so that the defendants could ever recover thereon any large part of their actual damage in event it should be eventually determined that such award was erroneous." Quigley Pub. Co. v. Showmen's Round Table, Inc., D.C., 7 F.Supp. 410, 411.

And also in Warner Brothers Pictures v. Gittone, 3 Cir., 110 F.2d 292, 293, the court stated:

"We have pointed out frequently that the granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it. (Citing cases.) To justify the granting of such an injunction there must be a showing of irreparable injury during the pendency of the action. (Citing cases.)"

The case of Owsley v. Yerkes, C.C., 185 F. 686, at page 688 very well sums up my feelings on this matter:

"It is a cardinal rule of equity not to issue a preliminary injunction in a doubtful case. If a fair doubt exists as to the propriety of the injunction it should not issue in limine, but should await a final hearing. For obvious reasons I refrain from expressing an opinion upon the many important and difficult questions argued on this motion. Indeed, the propriety of a definitive decision at this state of the proceedings may well be questioned. It is enough that upon almost every question

mooted there is doubt sufficiently grave to justify a refusal of the injunction."

The application for a preliminary injunction herein is denied. Settle order on notice.