RED OWL STORES, Inc. v. AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, LOCAL UNION NO. 114 (A.F.L.) et al.

Civ. No. 2343.

United States District Court
D. Minnesota, Third Division.
Jan. 27, 1953.

C. Donald Peterson and Herbert Lefler, Minneapolis, Minn., for plaintiff.

Robins, Davis & Lyons, Solly Robins, St. Paul, Minn., for defendant Amalgamated Meat Cutters & Butcher Workmen of North America, Local Union No. 114 (A.F.L.).

Felhaber & Larson, Richard Felhaber and Robert Fenlon, St. Paul, Minn., for St. Paul Food Retailers Ass'n, Inc., The Hove Food Market Inc., and Kleins Supermarkets, Inc.

William E. MacGregor and William E. MacGregor, Jr., Minneapolis, Minn., for National Tea Co., Inc.

Lipschultz, Altman & Geraghty, James Geraghty and Milton H. Altman, St. Paul, Minn., for Applebaum Food Markets, Inc., and Cut Price Supermarket.

DONOVAN, District Judge.

Plaintiff commenced action against defendants, seeking an injunction, forfeiture of corporate franchises and damages. At the hearing of plaintiff's motion for a preliminary injunction defendants moved for summary judgment or that the action be dismissed on the grounds that (1) the Court lacks jurisdiction over the subject matter, and (2) that plaintiff's complaint does not state a claim upon which relief can be granted.

On account of the importance of the case, the Court permitted the entire matter to be gone into very fully. Twenty-two witnesses were subpoenaed and thirteen of them were sworn and testified. Briefs were filed and oral arguments had.

It may be helpful to summarize the facts pleaded in the complaint and testified to by witnesses. Plaintiff is a corporation operating a large number of stores, vending groceries, meats and related products in nine states. In most states in which it is doing business it operates and is open evenings. In Minneapolis, Minnesota, plaintiff's policy of evening operations was opposed. Proceedings similar to the instant case were instituted, and as a result serious opposition to plaintiff's night operations was withdrawn by the local union and the action was discontinued in this Court.

In October, 1952, plaintiff opened a new retail store at Highland Village in the City of St. Paul, Minnesota. Among the persons there employed are eight meat cutters who are members of defendant Union. In keeping with plaintiff's policy of operation this store was open daily from 9 a.m. to 9 p.m., Sundays and specified holidays excepted. Plaintiff found this type of operation efficient and profitable, permitting sale

of commodities at economy prices to the consumer. The store in question is what is termed a "supermarket", strategically located in a shopping center adjacent to a large suburban residential area, with spacious free parking facilities.

The defendants, the St. Paul Food Retailers Association, Inc., National Tea Co., Inc., the Hove Food Market Incorporated, Kleins Supermarkets, Inc., Applebaum Food Markets, Inc., and Cut Price Supermarket, operate retail stores in competition with plaintiff. From time to time plaintiff and said defendant employers have negotiated with defendant Amalgamated Meat Cutters and Butcher Workmen of North America, Local Union No. 114 (A.F.L.) and its agents the matter of proposed agreements governing wages, hours of work and working conditions of members of the Union in the employ of plaintiff and defendant employers.

Much of the evidence is undisputed. Defendant employers are in competition with plaintiff. They are bound by an agreement in all important respects identical to that herein sought to be entered into with plaintiff by the Union. During negotiations had in connection therewith, defendant employers were represented. Defendant Hove preferred to be permitted to exercise its own judgment in the matter of night operations. Defendant Klein opposes night operations, as does the Union. Otherwise, the facts are sharply in dispute.

Plaintiff called a witness who was its retained attorney and who, testifying here-in, quoted defendant Union's agent as saying that the maneuvering leading to the instant case looked as though the Union "was carrying the ball" for the employers. On two occasions an employer (not a defendant) wrote defendant Union on the business stationery of defendant Hove, urging that the Union induce plaintiff to conform to the uniform contract governing night operations in the City of St. Paul, and saying that if the Union failed in this the writer would breach its contract. The writer turned out to be a member of a partnership which, by concession and independent contract, was operating the meat department at defendant Hove's in St. Paul. One of said letters is reproduced in our marginal notes.[1] No defendant would admit going as far as the witness E. V. Ruedy did in writing said letters. The foregoing will suffice as a statement of the facts for present purposes.

Plaintiff contends that its operations herein have been limited to intrastate commerce, and it makes no claim that federal law has been violated by defendants. It further contends that the pleadings and evidence adduced in support of the relief prayed for establish the existence of combinations, agreements and understandings between and among the Union and the other defendants which tend to fix and limit hours of operation of retail stores of plaintiff's class, all of which amounts to a conspiracy in restraint of trade, in violation of Section 623.01, Minnesota Statutes Annotated.[2]

1. "St. Paul 4, Minnesota, December 5, 1952
"Amalgamated Meat Cutters & Butcher Workmen of N. A.
"Local No. 114
"Labor Temple
"418 Auditorium St.
"St. Paul, Minn.
"Gentlemen:
"When we handed you our signed contract for 1952, as you know, we attached a notice to the effect that we expected you to enforce the same contract on our new competition, and gave you what we thought was a reasonable length of time, namely thirty days, to accomplish this.
"Thirty days have passed, and the contract has not been enforced. Therefore, we want you to know that we plan to keep our stores open from 9 AM to 9 PM starting on December 15, 1952.
"If, however, you can enforce our same contract on our new competitor by that time, you may rest assured we will be more than happy to go along with our present hours.
"Very truly yours,
"Hove Food Market, Inc.
"(signed) E. V. Ruedy"

2. "623.01. Trusts and combinations in restraint of trade, prohibited
"No person or association of persons shall enter into any pool, trust agreement, combination, or understanding whatsoever with any other person or association, corporate or otherwise, in

Defendants, and each of them, deny the existence of a conspiracy, and contend the strike and picketing at plaintiff's retail store in the City of St. Paul arises out of a labor dispute between plaintiff's employees who are members of defendant Union and their employer, the plaintiff herein, and defendants further contend that plaintiff and said employees were at all times herein engaged in interstate commerce. Defendants further contend that the subject matter of the action commenced by plaintiff is governed by the Clayton Act and the Norris-LaGuardia Act,[3] and hence the Court is without jurisdiction.

Plaintiff opposes defendants' motions for summary judgment and for a dismissal, contending that the only matter before the Court is its motion for a preliminary injunction. The motion for a dismissal was

restraint of trade, within this state, or between the people of this or any other state or country, or which tends in any way or degree to limit, fix, control, maintain, or regulate the price of any article of trade, manufacture, or use bought and sold within the state, or which limits or tends to limit the production of any such article, or which prevents or limits competition in the purchase and sale thereof, or which tends or is designed so to do; provided, that it shall be lawful for any person, firm, corporation, or association of persons conducting or carrying on a lawful business, to purchase the business and property of a competitor and thereafter consolidate such business and the property used in connection therewith under the sole management of and control of the purchaser if, before such purchase and consolidation, the attorney general shall, after hearing duly had upon notice to all persons interested, find and determine that such consolidation will not unreasonably limit and restrain the production and sale of an article of trade, commodity or service, and will not be detrimental to the public interest. Every person violating any provision of this section, or assisting in such violation, shall be guilty of a felony; and, upon conviction thereof, shall be punished by a fine of not less than $500, nor more than $5,000, or by imprisonment in the state prison for not less than three, nor more than five years."

3. Clayton Act, 29 U.S.C.A. § 52:

"Statutory restriction of injunctive relief

"No restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which injury there is no adequate remedy at law, and such property or property right must be described with particularity in the application, which must be in writing and sworn to by the applicant or by his agent or attorney.

"And no such restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means so to do; or from attending at any place where any such person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any person to work or to abstain from working; or from ceasing to patronize or to employ any party to such dispute, or from recommending, advising, or persuading others by peaceful and lawful means so to do; or from paying or giving to, or withholding from, any person engaged in such dispute, any strike benefits or other moneys or things of value; or from peaceably assembling in a lawful manner, and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by any party thereto; nor shall any of the acts specified in this paragraph be considered or held to be violations of any law of the United States."

Norris-LaGuardia Act, 29 U.S.C.A. § 101:

"Issuance of restraining orders and injunctions; limitation; public policy

"No court of the United States, as defined in sections 101–115 of this title, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of such sections; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in such sections."

made by defendant Union when the instant motion for an injunction was called for hearing by the Court. The motion to dismiss was later joined in by the remaining defendants. The motion for summary judgment was made by defendants at the conclusion of the testimony. The complaint is the only pleading before the Court.[4] Answers have not been interposed.

The Court will first consider the defendants' motions for summary judgment or a dismissal. Obviously, if either motion were granted the plaintiff's motion for a preliminary injunction would become moot.

■ In my opinion the complaint states a cause of action, and the principal action must abide the joinder of issues by answer. If it proceeds to trial, the result will be contingent upon the sufficiency of the evidence. The present status of the case does not permit the granting of summary judgment or dismissal of the principal action.

Proof submitted and arguments for and against the issuance of an injunction consumed seven days. In submitting plaintiff's motion for injunctive relief its able counsel limited the issue for determination to the existence of a conspiracy alleged and as illustrated in excerpts from the complaint quoted in the margin, and proof in support thereof. In the words of plaintiff's counsel:

"The issue of law involved at this stage of the proceedings is whether such combinations and agreements are unlawful and subject to restraint, both as to the business firms and the labor union involved, and whether a work stoppage and picketing by a labor union for such purpose may be restrained."

At the outset, it may be said that I am of the opinion that the formally executed agreements between the Union and employer-defendants are lawful. The only remaining question has to do with plaintiff's claim of conspiracy.

■ It is elementary, of course, that the plaintiff has the burden of proving conspiracy.[5] True, "Conspirators do not make minutes of their machinations, progress and objectives"[6], yet the proof proffered in this type of hearing is required to es-

---

4. Resort to the complaint makes clear that plaintiff's cause of action is based on diversity of citizenship, a claim for damages in excess of $3 000.00 and on an alleged violation of a state statute, claimed to arise out of unlawful

"agreements, combinations and understandings in restraint of trade within the County of Ramsey, State of Minnesota * * * designed to prevent and limit competition in the purchase and sale of groceries, meats and like food commodities in the trade area of St. Paul, Minnesota * * *. That no labor dispute exists between plaintiff and its employees * * * or between plaintiff and defendant Union * * *. That the declaration by defendant Union of the purported existence of a labor dispute is a sham and a guise to conceal a conspiracy between and among these defendants to compel plaintiff to join defendants in the aforesaid unlawful agreements, combinations and understandings in restraint of trade. * * * That on October 3, 1952, * * * a business agent of defendant Union engaged in collective bargaining negotiations with * * plaintiff * * * proposing * * * that plaintiff accept the contract between defendant Union and defendant National Tea Co., Inc. and members of defendant

The St. Paul Food Retailers Association, Inc., * * * [the agent] expressly stating that said contract 'is the proper pattern for the Red Owl Company' and that 'in this matter we are carrying the ball for the independents.' * * *. * * * that defendant Union acting in concert with the other defendants herein has demanded that plaintiff enter into an agreement on like terms. * * * That the defendant competitors of plaintiff have repeatedly threatened to disclaim the contract between themselves and the Union with respect to night hours of operation unless said Union put pressure upon plaintiff to force plaintiff to conform to the limitations upon night hours of operation fixed by and among defendants [and limited to Fridays only] in the aforesaid contract. * * * As a result of the unlawful conspiracy * * * and * * * of other unlawful acts * * * plaintiff has been damaged * * * in the amount of * * * $5,000.00 and will continue to be damaged in substantial amounts unless the acts of defendants are restrained forthwith."

5. Hensch v. Ormond, 8 Cir., 1 F.2d 206.

6. Scheele v. Union Loan & Finance Co., 200 Minn. 554, 274 N.W. 673, 678.

tablish a prima facie case.[7] Suspicion alone is insufficient, and the injunction should issue only in cases clearly demanding it.[8] If the issue were limited to employers alone, a labor dispute would obviously not be involved. [9] Has plaintiff carried the burden of proof required of it? Let us consider possible phases of conspiracy.

■ Respectable authority requires injunctive relief where the record discloses a combination between a Union and business groups to restrain competition.[10] Again, if the veiled threats contained in the letter quoted, supra, were joined in by defendant Union and defendant employers to such an extent as to exemplify their unity of purpose and of action in violation of law, then conspiracy among the defendants in restraint of trade might well be considered established. But defendants herein did not subscribe to said letter, nor did any of them admit authorship of any motives that a Court could point out as amounting to a combination or conspiracy in violation of any of the statutes pertinent to this proceeding. What transpired cannot be spelled out to be anything other than an effort on the part of defendant Union to precipitate and bring to fruition by lawful means a labor dispute between its employee members and their employer. Adopting plaintiff's theory of complaint and trial, I cannot see any combination in the instant case, except as it affected their services to their employer, and this does no violence to the quoted

state statute and was not considered an illegal restraint of trade at common law.[11] Of course, if a labor dispute alone were involved, the fact that plaintiff's business was solely intrastate would not be helpful, as Congress occupies the field of labor disputes between employer and employee to the exclusion of state regulation.[12]

■ The record of the instant case does not sustain the burden of proof required to permit the granting of the injunction sought by plaintiff.[13] It is a cardinal rule of equity that a preliminary injunction should not issue in a doubtful case. Whether conspiracy exists in fact can best be determined when all the evidence, both as to damages and the basis therefor, is before the Court.[14] Any strike and its accompanying picketing may cause irreparable damage, even though the strike be lawful. Immunity from the injunctive process exists so long as the defendant Union acts in its self-interest, and does not combine with defendant nonlabor groups.[15] The defendant Union, of course, must not combine with any or all of the remaining defendants to do anything prohibited by law.[16]

I am of the opinion that there was no combination or agreement amounting to a conspiracy, on the record and proof submitted by plaintiff in support of its motion for a preliminary injunction; hence the injunction prayed for must be denied.

An exception is allowed to all the parties.

7. Jewell v. Jewell, 215 Minn. 190, 9 N.W. 2d 513; 58 C.J.S., Monopolies, § 117(7), page 1172.

8. Lowe v. Consolidated Edison Co. Inc., D.C.N.Y., 67 F.Supp. 287.

9. Columbia River Packers Association, Inc. v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750.

10. Allen Bradley Co. v. Local Union No. 3, International Brotherhood of Electrical Workers, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939.

11. Apex Hosiery Co. v. Leader, 310 U.S. 469, 501, 60 S.Ct. 982, 84 L.Ed. 1311.

12. Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Division 998, v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364; Faribault Daily News, Inc. v. International Typographical Union, Minn., 53 N. W.2d 36.

13. Miller v. Minneapolis Underwriters Ass'n, Inc., 226 Minn. 367, 33 N.W.2d 48.

14. Broadway Theatre, Inc. v. Vitagraph, Inc., 5 Cir., 92 F.2d 445.

15. Lichterman v. Laundry & Dry Cleaning Drivers Union, Local No. 131, 204 Minn. 75, 282 N.W. 689, 283 N.W. 752.

16. Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834.