**POCKET BOOKS, INC., a New York corporation, Plaintiff,**

v.

**John A. WALSH, Superintendent of Police of the City of Bridgeport, Connecticut, John Carroll, Captain of the Police Department of the City of Bridgeport, Connecticut, and Joseph Guilfoile, Superintendent of Police of the City of Waterbury, Connecticut, Defendants.**

Civ. A. No. 9245.

United States District Court
D. Connecticut.

April 13, 1962.

George F. Lowman, Samuel V. Schoonmaker, Cummings & Lockwood, Stamford, Conn., for plaintiff.

Harry F. Spellman, John D. Mahaney, Waterbury, Conn., Hugh C. Curran, Bridgeport, Conn., for defendants.

CLARIE, District Judge.

The plaintiff, Pocket Books, Inc., seeks damages and injunctive relief against the defendant-police officials. The claims

298

for relief are based on the alleged unlawful suppression of the distribution and sale of a book published by the plaintiff and distributed for sale in the cities of Bridgeport and Waterbury. The allegations of the complaint are broad enough to encompass at least two possible theories of recovery: (1) common law tort of interference with a business relation and (2) an action based on the Civil Rights Act, 42 U.S.C.A. § 1981 et seq. The case is presently before the court on a motion for a preliminary injunction.

At a hearing on this motion the following facts were educed: The plaintiff, a New York publishing corporation, published a fictional book written by Harold Robbins, entitled "The Carpetbaggers". It is the sole publisher of the paperbound or pocket-size edition of the book; however, there is a more expensive hardbound edition which it does not publish. In Connecticut, most of the plaintiff's books are distributed by "wholesale jobbers" who deliver the books to retail stores and news stands for sale to the general public.

The Fairfield County News Company of Bridgeport distributed the book in the Bridgeport area. It acquired its supply of this book from Select Magazines, Incorporated.[1] Fairfield County News does not have an exclusive distributorship and copies of the book are distributed to larger outlets and chain stores by other distributors.

A complaint was received by the Bridgeport Police Department to the effect that the book was obscene. Pursuant to this complaint, Captain John Carroll and Joseph Walsh (also known as John A. Walsh), the Superintendent of Police, read the book and concluded that it was obscene. Connecticut has a statute C.G.S.A. § 53–243) which makes it a criminal offense to sell or possess any book containing obscene, indecent or impure language. Captain Carroll telephoned Mr. Salvatore Grosso, manager of Fairfield County News, explained that the police believed that the book was obscene, and requested that he remove it from his stands. Grosso sent a notice[2] to the retail outlets serviced by the Fairfield County News Company calling for the return of all copies of the book. The Fairfield County News has refrained from distributing copies of the book in the City of Bridgeport since Grosso's conversation with Captain Carroll.

Similar events ensued in the City of Waterbury. The Fare News Company distributed the book in that city. As a result of complaints, Joseph Guilfoile, the Superintendent of Police, read the book and notified the Fare News Company that in his opinion the book was "pretty rough". He requested that they cease to distribute it. Mr. Archie Mintz, the manager of Fare News, sent out a notice[3] recalling all unsold copies and has likewise ceased further distribution.

The plaintiff seeks a preliminary injunction restraining the defendant-police officers, their successors and their agents from suppressing or interfering with the sale of the book other than as expressly permitted by the laws of the State of Connecticut.

 The granting or denial of a motion for preliminary injunction rests largely in the judicial discretion of this

1. The relation between Select Magazines and Pocket Books, Inc. was not disclosed at the hearing. There was testimony that Pocket Books was the sole publisher of the paperbound edition and therefore it can be inferred that the copies furnished the News Companies originated from the plaintiff-publisher.

2. Plaintiff's Exhibit 1: "Attention Dealers: Please remove all copies of 'Carpetbaggers' from your pocketbook racks and hold for bookmobile or collector. Thank-You Fairfield County News Co."

3. Defendant's (Guilfoile) Exhibit A—"Supt. J. Guilfoile of the Waterbury Police Department has requested that all copies of Cardinal Edition—No. GC 999 'The Carpetbaggers' be removed from sale at all our dealers' stands in the Waterbury Area. If you have any copies of the above paperback title on hand, will you please remove them from display and sale, and send them back to us for credit with your regular return bundles the next time we call at your store for pickup. Thank you for your cooperation."

court.[4] "The award of a preliminary injunction is an extraordinary remedy which will not be granted unless upon a clear showing of probable success and possible irreparable injury to the plaintiffs, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed." Societe Comptoir De L'Industrie, etc. v. Alexander's Dept. Stores, 299 F.2d 33, 35 (2 Cir. 1962). It is a cardinal rule of equity that a preliminary injunction should not issue in a doubtful case.[5] Although it is not the function of the court at this time to decide this case on its merits, the claims of the plaintiff must be carefully examined to determine their propriety.

With respect to the possible liability of the defendants under a common law theory of a "business tort", the plaintiff must show, in order to succeed, that the defendants without privilege intentionally interfered with the plaintiff's business relations with Fairfield County News Company and/or The Fare News Company.[6] If the defendant-police officers acted in good faith believing that the book was obscene and a violation of the Connecticut Obscenity Statute, their actions were privileged and in no way tortious under a common law theory of liability. At the hearing on the motion for preliminary injunction, there was not a scintilla of evidence that the defendants acted in bad faith or with an intention to injure the plaintiff. The book was not put in evidence by either party

nor was the question of its obscenity raised. However, there was testimony that the police officials acted pursuant to complaints and only after having read the novel. They believed that they had authority to act and that it was their duty to call this book to the attention of the News Companies and warn them that in the opinion of the police the book was obscene.

Turning to the possible liability of the defendants under the Civil Rights Act, has the plaintiff shown that there is a reasonable probability that he will succeed in this action? The plaintiff does not challenge the constitutionality of the Connecticut Obscenity Statute. Rather, it claims that defendants have exceeded their powers. The Connecticut statute[7] provides in pertinent part: "Any person who buys, sells, advertises, * * * or has in his possession with intent to sell, * * * any books * * * containing obscene, indecent or impure language * * * shall be (guilty of an offense against the laws of the State of Connecticut)". The Supreme Court of Errors in construing the predecessor of this statute has held that proof of knowledge that the article is obscene or indecent is a necessary element for a conviction.[8] In effect what the defendants did here was to call to the attention of the Wholesale Distributors the opinion of the police that this book was obscene. Such appears to be a lawful act contemplated both by the statute and the Connecticut decisions.[9] It was not shown at the hearing

---

4. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 40 S.Ct. 463, 64 L.Ed. 822 (1920); Joshua Meier Company v. Albany Novelty Mfg. Co., 236 F.2d 144 (2 Cir. 1956).

5. Red Owl Stores v. Amalgamated Meat Cutters, etc., 109 F.Supp. 629 (D.Minn. 1953); Decorative Stone Co. v. Building Trades Council, 13 F.2d 123 (2 Cir. 1926).

6. Restatements, Torts § 766 (1939); 1 Harper & James, Torts § 6.12 (1956); Ford v. C. E. Wilson & Co., 129 F.2d 614 (2 Cir. 1942).

7. General Statutes, § 53–243, C.G.S.A. § 53–243; Connecticut, also, has a statute providing for seizure of obscene literature. This is, likewise, part of the Criminal Procedure section of the General Statutes. See, C.G.S.A. § 54–29.

8. State v. Sul, 146 Conn. 78, 147 A.2d 686 (1958); see also, Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

9. In the recent Connecticut case of State v. Trumbull Huntington, No. 24657, Superior Court Hartford County, March 7, 1962, the defendant had been advised by the State's Attorney and other law en-

on this matter that the defendants banned the book or ordered the distributors not to sell the book.[10]

Moreover, there was no showing that the managers of the two news companies acted solely on the basis of the opinion of the police or because of the request of the police. It is conceivable that after having had the novel called to their attention, the distributors made a determination of their own that this book was obscene and as a result chose not to distribute it. Both Mintz and Grosso testified that their removal of the book was done voluntarily.

In any event, nothing prevents these distributors or the publishers, from returning this book to the stands other than the risk that they might be in violation of the Connecticut Obscenity Statute. In such case, they will have all the protections of a jury trial including the opportunity to present evidence to the effect that the book is not obscene.

■ For these reasons the court concludes that the facts established at the hearing are not sufficient to establish a need for present injunctive relief. The plaintiff has not satisfied the burden of clearly showing a reasonable probability of success in its action for damages and a permanent injunction.

■ It is not within the province of this court to suppress freedom of expression, a fundamental right, essential to the exercise of American freedoms. However, this court recognizes the necessity of preventing flagrant abuses of that right by individuals who would utilize no self restraint in the exercise of the right of free expression.

■ Proper state obscenity laws do not undermine or disregard liberties protected by the Fourteenth Amendment. They serve, rather, to maintain the values of human dignity, necessary to sustain the principles of our freedoms.

To restrain or discourage unoppressive performance of police functions would threaten the implementation of proper state laws. In the balance of interests before the court at this time, it is not evident that the defendants exceeded their lawful bounds.

The plaintiff's motion for a preliminary injunction is denied.

---

forcement agencies, prior to his arrest, that the book in question was considered obscene by them. This fact was used to prove knowledge by the defendant that the proscribed material was obscene.

10. In the case of New American Library of World Literature v. Allen, 114 F.

Supp. 823 (N.D.Ohio 1953) the court enjoined a chief of police who went beyond mere warnings or notice and ordered booksellers not to sell certain books. The decision was based on the ground that the officer had exceeded his powers.